| | | |
|---|---|---|
| IVAN G. McKINNEY, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 14-3564 (KM) (JBC) |
| | : | |
| v. | : | |
| | : | |
| DR. HEMSLEY, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I.    INTRODUCTION

The plaintiff, Ivan G. McKinney, is proceeding *pro se* with a civil rights complaint filed

pursuant to 42 U.S.C. § 1983. Presently pending before this Court is the motion of defendants

Davies, Bigott, Pickel, and Pawson to dismiss the complaint for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6), or for a more definite statement pursuant Rule 12(e).

For the following reasons, the motion to dismiss will be granted. Mr. McKinney's federal claims

against these four defendants will be dismissed without prejudice and this Court will decline to

exercise supplemental jurisdiction over Mr. McKinney's state law claims. Mr. McKinney's

request for default judgment against Davies will also be denied, as will his request for an

emergency injunction.

## II.    BACKGROUND

Previously, this Court severed claims from Mr. McKinney's complaint into separate

actions. The severed allegations in this action arise from Mr. McKinney's prior incarceration at

the Bergen County Jail (he was subsequently transferred to New Jersey State Prison). This Court

initially permitted claims against Davies, Bigott, Pickel and Pawson to proceed past screening.

Mr. McKinney alleges, *inter alia*, that the defendants failed to respond to his grievances with respect to denial of medical care, and specifically that Pawson failed to respond to his letter complaining about being refused a medical appointment by Dr. Hemsley.[1]

The complaint alleges that, while incarcerated at the Bergen County Jail, McKinney was suffering from a tear in his left knee meniscus, lower back bulge, herniated neck discs, and a hernia. Before his incarceration, in 2010, Mr. McKinney received a prescription to have hernia surgery. His incarceration began in February 2011 without the surgery having occurred. Dr. Hemsley (not part of this motion this dismiss) allegedly refused to authorize surgery. On September 9, 2012, McKinney wrote a letter to Pawson to complain about Hemsley's refusal.

Defendant Pawson is alleged to be in charge of the medical department at the Bergen County Jail. Mr. McKinney states that Pawson has never responded to his medical grievances. Mr. McKinney also alleges that Pawson did nothing about the condition of his mattress or the fact that he was confined to his cell for 21 hours per day.. (*See* Dkt. No. 4 at p. 16)

Defendant Pickel, too, allegedly failed to respond to McKinney's grievances, except one the he was being double-charged for an "entrance fee of $55.00."[2] (*Id.* at p.17)

Defendant Bigott was the warden of the Bergen County Jail when Mr. McKinney made the complaints described above. McKinney states that he sent Bigott a request regarding his medical issues, but that Warden Bigott chose to "turn his head" from his medical department. (*See id.*) Mr. McKinney also appears to raise allegations regarding his thin mattress and his 21-hour lockdown, stating that Bigott did nothing about them.

---

[1]  Dr. Hemsley separately answered the complaint and is not part of this motion to dismiss.
[2]  The handwriting is unclear; the fee may have been $5.00. I will assume the larger amount.

2

Finally, Mr. McKinney alleges that defendant Davies placed him in 21-hour lockdown. He claims that Davies never came to where Mr. McKinney was incarcerated. (*See id.* at p.18) Mr. McKinney states that he has written Davies on several occasions to no avail.

Mr. McKinney seeks monetary damages in his complaint.

### III.    STANDARD OF REVIEW ON RULE 12(B)(6) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Worth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly case, infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his "entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

As Mr. McKinney is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, it must meet some minimal standard. "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## IV. DISCUSSION

### A. Captain Davies and Default Judgment

Mr. McKinney has filed a request for default judgment against defendant Davies. (*See* Dkt. No. 48) While it appears that Mr. McKinney requested that the Clerk enter default against Davies prior to his request for default judgment (*see* Dkt. No. 29), the Clerk has not done so, for reasons that are not clear. The Clerk's entry of default is of course a precondition to the entry of a default judgment. *See Alfred v. New Jersey*, No. 13-332, 0215 WL 3603964, at *2 (D.N.J. June 5, 2015) (noting that in determining whether to grant default judgment, court must ensure that the entry of default under Federal Rule of Civil Procedure 55(a) was proper).

Because the lack of entry of default is easily remedied if necessary, I will set it aside and analyze whether a default judgment would be appropriate. I conclude that it would not. The Court has a well-established preference that cases be decided on the merits rather than by default judgment whenever practicable. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003). In analyzing a request for default judgment, this Court "accepts as true a plaintiff's

well-pleaded factual allegations while disregarding its legal conclusions." *Laborers Int'l Union of N. Am. Local No. 199 Welfare, Pension, Apprenticeship & Training Annuity & Laborers-Employers Coop. Educ. Trust Funds of Del., Inc. v. Ramco Solutions,* No. 11-4976, 2013 WL 4517935, at *3 (D.N.J. Aug. 26, 2013) (citing *Directv, Inc. v. Asher,* No. 03–1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed.1998))).

For the reasons described in Section B.1, *infra,* Mr. McKinney's complaint fails to state a viable § 1983 claim against Davies. His request for a default judgment against Davies is therefore denied, and the Court will consider Davies' response to the complaint. *Accord Rouleau v. Elwell,* No. 10-3804, 2013 WL 5676068, at *3-4 (D.N.J. Oct. 17, 2013) (denying request for default judgment on unlawful seizure claim where plaintiff failed to state a claim for unlawful seizure).

## B. Federal Claims

### 1. *Davies*

The sole allegation against Davies is that he placed McKinney in a cell for twenty-one hours per day. The Eighth Amendment requires prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must '"take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). A prisoner asserting a conditions-of-confinement claim must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Id.* at 834 (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). These minimal civilized measures of life's necessities include food, clothing, shelter, sanitation,

5

medical care, and personal safety. *See Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 256 (3d Cir. 2010) (citations omitted). The plaintiff must also allege that the prison official acted with deliberate indifference to the prisoner's health or safety. *See Wilson v. Seiter,* 501 U.S. 294, 298–99 (1991). Thus, "'the official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" *Wilson v. Burks,* 423 F. App'x 169, 173 (3d Cir. 2011) (quoting *Farmer,* 511 U.S. at 837). In analyzing whether the conditions of confinement violate the Eighth Amendment, a court examines the totality of the conditions at the institution. *See Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir. 1996). "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." *Id.* (citing *Tillery v. Owens,* 907 F.2d 418, 427 (3d Cir. 1990)); *see also Riley v. DeCarlo,* 532 F. App'x 23, 26 (3d Cir. 2013) (per curiam).

Mr. McKinney fails to state a conditions-of-confinement claim against Davies. The complaint states only that Davies placed him in his cell for twenty-one hours per day and that he met with Davies to discuss this issue. It lacks any allegations that Davies acted with deliberate indifference in depriving him of the minimal civilized measure of life's necessities.[3] The allegation regarding the 21-hour lockdown, in and of itself, is insufficient to state an Eighth Amendment claim against Davies. *See Mercado v. Dep't of Corr.,* No. 16-1622, 2017 WL

---

[3] Mr. McKinney complains elsewhere in the complaint about the mattress in his cell. However, he never alleges that Davies had knowledge of this purported condition. Thus, Mr. McKinney's failure to allege that Davies had knowledge of this condition means that Davies did not act with deliberate indifference. *See Ridgeway v. Guyton,* 663 F. App'x 203, 205 (3d Cir. 2016) ("The state of mind necessary for a viable [conditions of confinement] claim . . . is 'deliberate indifference' to inmate health or safety[,] a standard that requires actual knowledge or awareness of the risk of the condition of confinement to the prisoner.") (internal quotation marks and citation omitted).

1095023, at *6 (D. Conn. Mar. 23, 2017) ("Although the Plaintiff complains about confinement in his cell at MacDougall-Walker for twenty-three hours a day, that type of confinement in and of itself does not rise to the level of an Eighth Amendment violation. Prisoners have no right to be housed in comfortable surroundings."); *Kinser v. Cnty. of San Bernardino*, No. 11-0718, 2011 WL 4801899, at *4 (C.D. Cal. Aug. 25, 2011) ("Plaintiff alleges that she has been confined to her cell more than 22 hours a day and that she has had to eat all her meals in her cell in close proximity to her toilet. These allegations by themselves do not state a [constitutional] conditions of confinement claim.") (citations omitted); *O'Mara v. Hillsborough Cnty. Dep't of Corr.*, No. 08-0051, 2008 WL 5077001, at *7 (D.N.H. Nov. 24, 2008) ("His complaint that he was afforded only two hours of out-of-cell time a day does not state a claim of constitutional dimension.") (citations omitted).

Therefore, Mr. McKinney's claims against Davies will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 2. Warden Bigott

Mr. McKinney states in the complaint that he sent Warden Bigott a request to help him with his ailments, and that Bigott is liable via *respondeat superior*. A § 1983 plaintiff claiming damages cannot rely on a *respondeat superior* theory. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of *respondeat superior*"). Instead, a plaintiff must allege that a supervisor had personal involvement in the alleged wrongs. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

With respect to supervisors, the United States Court of Appeals for the Third Circuit has

> recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

*Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Mr. McKinney expressly states in his complaint that he is suing Bigott under a *respondeat superior* theory. As noted above, such a theory is not available in a § 1983 suit for damages. To that extent, it is dismissed.

Construing the complaint liberally, however, Mr. McKinney may also be attempting to assert a claim against Warden Bigott based on his allegation that he sent Bigott a complaint regarding all of his ailments, which Bigott ignored.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551

8

> F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or
> medical malpractice do not trigger constitutional protections.
> *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

The complaint alleges that two doctors previously told McKinney that he needed hernia surgery and that one had actually prescribed surgery. He claims that Dr. Hemsley refused to send him for surgery. Thus, Mr. McKinney has potentially alleged a constitutional violation by Hemsley. The question is whether he has alleged that Warden Bigott played a personal role in any such violation.

The complaint alleges that McKinney sent Warden Bigott a complaint about his ailments, and it is inferable that Bigott has overall responsibility for prison operations. There is case law suggesting that complaints to a supervisor regarding a constitutional violation that is ongoing may be sufficient to support a claim of deliberate indifference. *See, e.g., Cardona v. Warden— MDC Facility*, No. 12–7161, 2013 WL 6446999, at *5 (D.N J. Dec. 6, 2013) (holding that plaintiff stated a valid denial of medical services claim against the prison warden because plaintiff alleged an ongoing constitutional violation, and alleged that the warden was made aware of the ongoing violation through repeated written requests); *Carter v. Smith*, No. 08–279, 2009

WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) ("Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524–25 (N.D.N.Y. 2008)).

Such deliberate indifference is far from established, but it merits exploration in discovery. On this theory only, then, the motion to dismiss the § 1983 claim as against Bigott is denied.[4]

The complaint also alleges that Warden Bigott never ordered the replacement of what McKinney describes as an inadequate mattress. Even assuming that this would make out a conditions-of-confinement claim, there is no allegation of personal involvement by Bigott.

Therefore, Mr. McKinney's claims against Warden Bigott will be permitted to proceed in part, as to the claim that he was deliberately indifferent to the withholding of medical care.

*3. Lieutenant Pickel*

Mr. McKinney asserts that Lieutenant Pickel is liable for failing to make any response to his grievances, except one: that "that they [were] double charging [McKinney] a entrance fee" of $55.

Mr. McKinney does not allege that Pickel ever received his other "grievances" or was personally involved in any deprivation. Even if this Court were to assume that the underlying actions rose to the level of an ongoing constitutional violation, the failure to allege such personal involvement by Pickel is fatal to the claim. *See, e.g., Thompson*, 2017 WL 1536226, at *6.

---

[4]     The motion requests in the alternative that this Court require Mr. McKinney to provide a more definite statement to his complaint pursuant to Federal Rule of Civil Procedure 12(e). Moving defendants argue that they are entitled to a more definite statement because while this Court has assumed that Mr. McKinney is asserting claims under § 1983, "[t]here is not a single reference to § 1983 anywhere in . . . the Complaint." (Dkt. No. 46-2 at p.9) The complaint, however, states that jurisdiction is founded on 42 U.S.C. § 1983, and repeatedly alleges that defendants acted under color of state law. (*See* Dkt. No. 4 at p.2)

10

As for the "double charge," there is no allegation that this was an ongoing violation as to which Pickel failed to act, that Pickel had any responsibility for collecting or refunding any charge, or that McKinney pursued an administrative claim for the money. At any rate, the allegation is that Pickel responded positively, acknowledging the charge.

Accordingly, the complaint fails to state a § 1983 claim against Pickel.

### 4. *Capt. Pawson*

The complaint alleges that Captain Pawson permitted the medical department to ignore his medical needs and did not respond to his letter grievances. A separate section of the complaint alludes to a September 19, 2012 letter to Pawson in which McKinney complained about the denial of a medical appointment. Pawson is also blamed for the failure to remedy McKinney's other complaints.

As to the mattress or the 21-hour lockdown, the complaint fails to allege that Pawson was personally involved or that these matters were within his area of responsibility.

It is alleged, however, that Capt. Pawson was in charge of the medical unit at the Bergen County Jail. An allegation that he ignored medical needs, then, states a § 1983 claim.

### 5. *State Law Claims*

No state law claim is clearly stated. Out of caution, however, I consider that one or more may have been intended. As to Davis and Pickel, whose federal claims are being dismissed, the only possible basis for subject matter jurisdiction would be a discretionary exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367. However, I will decline to exercise supplemental jurisdiction over the state law claims, if any, against Davies and Pickel. *See T.R. v. Cnty. of Delaware,* No. 13–2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over state law claims over one defendant where there are no viable

federal claims against that defendant, despite the fact that plaintiff may have pled plausible claims against another defendant) (citations omitted); *see also Nadal v. Christie,* No. 13–5447, 2014 WL 2812164, at *8 (D.N.J. June 23, 2014).

## C. Request for an Injunction

On July 20, 2017, this Court received a letter from Mr. McKinney. Mr. McKinney requests an emergency injunction regarding the opening of his legal mail. (*See* Dkt. No. 67) However, Mr. McKinney is now incarcerated at the New Jersey State Prison in Trenton, New Jersey. This case relates to Mr. McKinney's treatment during a previous period of incarceration at the Bergen County Jail. A preliminary injunction requires that a plaintiff demonstrate that (1) he is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest. *See Maldonado v. Houston,* 157 F.3d 179, 184 (3d Cir. 1988). Essentially the same standard applies to temporary restraining orders. *See Ballas v. Tedesco,* 41 F.Supp.2d 531, 537 (D.N.J. 1999). Self-evidently, the claim that Mr. McKinney's mail is being opened cannot relate to Bergen County Jail, and there cannot be any ongoing injury. The motion for an injunction is denied.

## V. CONCLUSION

Mr. McKinney's request for default judgment against Davies will be denied. Mr. McKinney's federal claims against defendants Davies and Pickel will be dismissed without prejudice for failure to state a claim and this Court will decline to exercise supplemental jurisdiction over any state law claims against Davies and Pickel. Mr. McKinney's request for an emergency injunction is denied. An appropriate order will be entered.

DATED:  September 28, 2017

KEVIN MCNULTY
United States District Judge